# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, | Case No. 1:24-cv-00943-EPG-HC |
| Petitioner, | ORDER GRANTING PETITIONER'S MOTION TO PROCEED UNDER PSEUDONYM AND DENYING RESPONDENTS' MOTION TO DISMISS |
| v. | |
| MINGA WOFFORD, et al., | (ECF Nos. 2, 8) |
| Respondents. | ORDER SETTING BRIEFING SCHEDULE |

Petitioner John Doe, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 4, 10, 11.) For the reasons set forth herein, Petitioner's motion to proceed under pseudonym is granted and Respondents' motion to dismiss is denied.

## I.

## BACKGROUND

Petitioner is a citizen of Mexico who has lived in the United States since he was eight years old and became a permanent resident on July 26, 2000. (ECF No. 1 at 6.[1]) In 2011, Petitioner pleaded no contest to two counts of lewd acts upon a child and one count of child

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

1  endangerment.² (ECF No. 1 at 7; ECF No. 1-10 at 34.) Petitioner was sentenced to an

2  imprisonment term of eleven years and four months. (ECF No. 1-10 at 34.)

3       In March 2020, Petitioner was released on parole after serving ten years in prison. (ECF

4  No. 1 at 7.) The California Department of Parole and Rehabilitation Board of Parole Hearings

5  conducted a screening test and declined to refer Petitioner for an evaluation under the Sexually

6  Violent Predator ("SVP") program, finding that he did not "meet the case factors and clinical

7  evaluation criteria for referral to SVP." (ECF No. 1-9 at 170.) Upon release, Petitioner registered

8  as a sex offender and will continue to do so for the rest of his life. (ECF No. 1 at 8.)

9       In June 2021, fifteen months after his release from prison, Petitioner was detained by

10 U.S. Immigration and Customs Enforcement ("ICE") at a routine parole check-in pursuant to 8

11 U.S.C. § 1226(c). (ECF No. 1 at 8–9 & n.2.) On June 1, 2021, the Department of Homeland

12 Security ("DHS") issued a Notice to Appear ("NTA") charging Petitioner with removability

13 pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for having an aggravated felony conviction. The

14 immigration judge ("IJ") found Petitioner statutorily ineligible for a bond hearing. (ECF No. 1 at

15 9.)

16      Petitioner applied for deferral of removal under the United Nations Convention Against

17 Torture ("CAT") and sought readjustment of status with a waiver of inadmissibility under

---

² In 2010, Petitioner was babysitting the child of one of Petitioner's cousins who had molested Petitioner when he was a child. Petitioner alleges that "[i]n a grave lapse of judgment, Mr. Doe lost control while playing a jumping game with the victim. Thinking about the abuse he suffered, he pulled the victim's underpants roughly for several seconds, which caused an injury to her vagina." (ECF No. 1 at 7.) Petitioner cites to the declaration of Petitioner's criminal defense counsel, which states that counsel retained the services of a Forensic Sexual Assault Nurse Examiner ("SANE") to review and interpret the results of the Sexual Assault Response Team ("SART") examination. (Id.; ECF No. 1-9 at 121.) The SANE concluded that the injuries did not appear sexual in nature but were more consistent with a straddle-type injury. Additionally, the prosecution never discovered any DNA evidence suggesting a penetrative sexual injury. (ECF No. 1-9 at 121.) Respondent cites to police reports, one of which documents a conversation an officer had with the emergency room doctor who had examined the victim. (ECF No. 8 at 2 n.3; ECF No. 1-10 at 42.) The doctor told the officer that he observed bruising on the outer vulva area, linear bruising along the lines where underwear would be, a laceration on the vaginal opening, and coagulated blood inside the vaginal canal. (ECF No. 1-10 at 42.) The other police report documents a conversation an officer had regarding the SART exam with someone who appears to be a medical professional. The person stated there were several abrasions in the genital area, a specific fresh abrasion with oozing blood between the labia majora and labia minora, bruising on the side of the clitoris, and abrasions around the anus. (ECF No. 1-10 at 60.)  The person indicated that this appeared to be most likely caused by attempted penetration of the vagina and anus and sexual abuse. (Id. at 60–61.)

2

1  Immigration and Nationality Act ("INA") § 212(h). (ECF No. 1 at 9.) On September 7, 2022, the
2  IJ denied Petitioner's applications for relief and ordered Petitioner removed to Mexico. (ECF No.
3  1-4.) On February 14, 2023, the Board of Immigration Appeals ("BIA") summarily affirmed the
4  IJ's decision without opinion. (ECF No. 1-5.)

5  Petitioner appealed the BIA's decision to the Ninth Circuit, which granted the petition for
6  review on April 19, 2024, and remanded the matter based on the IJ's failure to adequately
7  consider expert testimony on Petitioner's risk of torture in Mexico. (ECF No. 1-6.) On January 8,
8  2025, the BIA, in turn, remanded the matter to the immigration court for further proceedings.
9  (ECF No. 13-1.)

10  Meanwhile, Petitioner filed a petition for writ of habeas corpus in the United States
11  District Court for the Northern District of California, challenging his prolonged detention on
12  procedural due process grounds. (ECF No. 1 at 10.) On September 1, 2023, the district court
13  granted the petition and ordered a bond hearing at which "DHS must establish by clear and
14  convincing evidence that Petitioner is a flight risk or a danger to the community in order to
15  continue his detention." Doe v. Becerra, No. 23-cv-02382-DMR, 2023 WL 5672192, at *4 (N.D.
16  Cal. Sept. 1, 2023). On September 12, 2023, an IJ conducted a bond hearing and denied bond.
17  (ECF No. 1-12.)

18  Petitioner appealed, and on January 31, 2024, the BIA granted Petitioner's appeal,
19  finding that the IJ's decision "cannot be upheld as currently constituted" because it is "unclear
20  whether the burden was consistently applied when analyzing whether [Petitioner] presents a
21  danger to the community" and the IJ did not "meaningfully address the tests and tools underlying
22  the expert's determination." (ECF No. 1-13 at 4, 5.) The BIA remanded the matter, directing the
23  IJ to "issue a new decision that reflects proper application of the burden of proof," "consider and
24  address the record evidence more fully," "enter more detailed factual findings and legal
25  conclusions as to whether [Petitioner] presents a future danger to the community," and "assess
26  anew whether DHS has submitted sufficient evidence to outweigh" Petitioner's "lengthy
27  residence in the United States, his strong family and community ties, his education and
28  employment history, and his prospects for future employment" so as to establish that he is "such

3

1  a significant flight risk that no bond or release conditions could mitigate the risk." (Id.) On
2  February 26, 2024, the IJ issued a new decision denying bond. (ECF No. 1-14.) On October 22,
3  2024, the BIA declined to reverse the IJ's findings "[g]iven the deferential nature of our review
4  as to the underlying factual findings[.]" (ECF No. 12 at 13; ECF No. 12-1 at 3.)

5      Meanwhile, on June 26, 2024, Petitioner filed a petition for writ of habeas corpus in the
6  United States District Court for the Northern District of California, challenging his prolonged
7  detention on substantive due process grounds. (ECF No. 1 at 13.) On July 31, 2024, the Ninth
8  Circuit issued Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024), which "affirm[ed] the
9  application of the immediate custodian and district of confinement rules to core habeas petitions
10 filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Accordingly,
11 Petitioner filed a notice of voluntary dismissal. (ECF No. 1 at 14.)

12     On August 14, 2024, Petitioner filed the instant petition for writ of habeas corpus in this
13 Court challenging his prolonged detention on substantive due process grounds. (ECF No. 1.)
14 Respondent filed a motion to dismiss, and Petitioner filed an opposition. (ECF Nos. 8, 12.)

15 **II.**
16 **DISCUSSION**

17 **A. Petitioner's Motion to Proceed Under Pseudonym**

18     "[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed
19 anonymously when special circumstances justify secrecy." Does I thru XXIII v. Advanced
20 Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). "In this circuit, we allow parties to use
21 pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary ... to
22 protect a person from harassment, injury, ridicule or personal embarrassment.'" Id. at 1067–68
23 (quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). "[A] party may preserve
24 his or her anonymity in judicial proceedings in special circumstances when the party's need for
25 anonymity outweighs prejudice to the opposing party and the public's interest in knowing the
26 party's identity." Advanced Textile Corp., 214 F.3d at 1068.

27         To determine whether to allow a party to proceed anonymously
    when the opposing party has objected, a district court must balance
28         five factors: "(1) the severity of the threatened harm, (2) the

> reasonableness of the anonymous party's fears, ... (3) the anonymous party's vulnerability to such retaliation," (4) the prejudice to the opposing party, and (5) the public interest.

Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est., 596 F.3d 1036, 1042 (9th Cir. 2010) (quoting Advanced Textile Corp., 214 F.3d at 1068).

Petitioner has moved to proceed under pseudonym for the following reasons:

> (1) to protect Mr. Doe from unnecessarily heighten risk of harm and injury by private or government actors in Mexico if facts relating to his claim for protection under the Convention Against Torture are disclosed to the public; and (2) to prevent his mental health conditions from worsening; and (3) to prevent any harm he might experience in detention from revelation of sensitive criminal history information.

(ECF No. 2 at 3.) With respect to the first factor, Petitioner notes that he has applied for protection under CAT because of his fear of return to Mexico. Petitioner has declared that he has been threatened with death because of his offense against his cousin's daughter, and the victim's father, who allegedly has connections with organized crime and law enforcement in Michoacan, Mexico, has admitted in a statement to law enforcement of his intent to have Petitioner killed. With respect to the second and third factor, Petitioner argues that his fears are corroborated by country conditions evidence and uncontested expert testimony. The expert "testified that 'the level of danger Mr. [Doe] faces of being tortured or killed is extreme, and more probably than the likelihood of him not being tortured or killed upon his deportation.'" (ECF No. 2 at 4 (emphasis deleted) (alteration in original) (citation omitted).) The expert "described the 'lynching of suspected pedophiles' by members of organized crime as 'commonplace' and broadly accepted," and stated that "'Mr. [Doe's] conviction for child molestation will make him an ideal target for cartels to send a message.'" (Id. (alteration in original) (citation omitted).)

Petitioner also moves to proceed under pseudonym to avoid exacerbating pre-existing mental health conditions. Petitioner has received mental health treatment for symptoms of anxiety, depression, and adjustment disorder since 2015. (ECF No. 2 at 5.) In 2022, a licensed clinical psychologist found that Petitioner's "psychological profile is suggestive of Major Depressive Disorder and Generalized Anxiety Disorder, as well as the psychological sequelae of childhood sexual abuse[.]" (ECF No. 1-9 at 73.) In 2022, while in ICE detention, Petitioner was

sexually assaulted by another detainee.[3] (ECF No. 1-16 at 4 ¶ 8.) Petitioner has been prescribed Celexa and Wellbutrin to manage his symptoms of anxiety and depression. (Id. at ¶ 9.) "Finally, Petitioner contends that revealing his criminal history and mental health history could put him at risk of harm inside detention." (ECF No. 2 at 5.)

Respondent "moves to strike use of a pseudonym and urges this Court compel filing of a lawful § 2241 petition," noting that "Petitioner, an adult violent sex offender with a requirement that he register as such, has not been granted leave of this Court to hide his identity." (ECF No. 8 at 1 n.1.) Respondent does not identify any prejudice Respondent would suffer if Petitioner is allowed to proceed under pseudonym, and Respondent does not provide authority in support of the opposition to the motion to proceed under pseudonym.

As noted by Petitioner, "[t]wo courts have permitted [Petitioner] to proceed under pseudonym given the sensitive nature of his claim for relief, and in neither instance has the government opposed," citing to Doe v. Becerra, No. 23-cv-02382-DMR, 2023 WL 5672192, at *1 n.1 (N.D. Cal. Sept. 1, 2023); L.M. v. Garland, No. 23-241, 2024 WL 1696365, at *1 n.1 (9th Cir. Apr. 19, 2024). (ECF No. 12 at 3 n.1.) Other courts have permitted habeas petitioners to proceed under pseudonym under similar circumstances. See, e.g., Doe v. Becerra, 732 F. Supp. 3d 1071, 1091 (N.D. Cal. 2024) ("Given the circumstances of Mr. Doe's petition and his allegations that he will face torture or death if he returns to Mexico, the Court previously granted Mr. Doe's motions to proceed under pseudonym[.]"), abrogated on other grounds by Doe, 109 F.4th 1188. The Court finds that upon balance, the factors weigh in favor of Petitioner. Accordingly, the Court will grant Petitioner's motion to proceed under pseudonym.

**B. Motion to Dismiss**

Petitioner asserts that his prolonged detention has become punitive and violates substantive due process. (ECF No. 1 at 34.) In the motion to dismiss, Respondent contends that "[t]he Supreme Court has repeatedly upheld detention pending removal proceedings, as in this case, under § 1226(c)," citing to Demore v. Kim, 538 U.S. 510 (2003). (ECF No. 8 at 3.)

---

[3] Petitioner made a Prison Rape Elimination Act complaint against the other detainee. An investigation found that Petitioner's allegation was substantiated. (ECF No. 1-16 at 4 ¶ 8.)

1    Congress has enacted a complex statutory scheme governing the detention of noncitizens
2 during removal proceedings and following the issuance of a final order of removal. "Where an
3 alien falls within this statutory scheme can affect whether his detention is mandatory or
4 discretionary, as well as the kind of review process available to him if he wishes to contest the
5 necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

   Here, Petitioner is detained pursuant to 8 U.S.C. § 1226(c),[4] which provides:

> (c) Detention of criminal aliens
>
>    (1) Custody
>
>    The Attorney General shall take into custody any alien who--
>
>        (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
>        (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
>        (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[1] to a term of imprisonment of at least 1 year, or
>
>        (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
>    when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
>    (2) Release
>
>    The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall

---

[4] The Ninth Circuit has "conclude[d] that Subsection C applies throughout the administrative and judicial phases of removal proceedings." Avilez v. Garland, 69 F.4th 525, 535 (9th Cir. 2023).

7

>take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

There has been "a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing and/or release

1  from custody for noncitizens detained under 8 U.S.C. § 1226(c), but it has recognized that
2  "district courts throughout this circuit have ordered immigration courts to conduct bond hearings
3  for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that
4  "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal
5  proceedings, without a bond hearing, will—at some point—violate the right to due process.'"
6  Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other
7  grounds, 144 S. Ct. 1339 (2024).

8      "The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall . . . be
9  deprived of life, liberty, or property, without due process of law.'" United States v. Quintero, 995
10 F.3d 1044, 1051 (9th Cir. 2021) (quoting U.S. Const. amend. V). "The Due Process Clause
11 'protects individuals against two types of government action': violations of substantive due
12 process and procedural due process." Id. (quoting United States v. Salerno, 481 U.S. 739, 746
13 (1987)). "[S]ubstantive due process prevents the government from engaging in conduct that
14 shocks the conscience, or interferes with rights implicit in the concept of ordered liberty."
15 Salerno, 481 U.S. at 746 (internal quotation marks and citations omitted). "When government
16 action depriving a person of life, liberty, or property survives substantive due process scrutiny, it
17 must still be implemented in a fair manner. This requirement has traditionally been referred to as
18 'procedural' due process." Salerno, 481 U.S. at 746 (citation omitted).

19     In Wong Wing v. United States, 163 U.S. 228 (1896), the Supreme "Court held that
20 punitive measures could not be imposed upon aliens ordered removed because 'all persons
21 within the territory of the United States are entitled to the protection' of the Constitution."
22 Zadvydas, 533 U.S. at 694 (quoting Wong Wing, 163 U.S. at 238). See Zadvydas, 533 U.S. at
23 694 (Kennedy, J., dissenting) ("Where detention is incident to removal, the detention cannot be
24 justified as punishment nor can the confinement or its conditions be designed in order to punish."
25 (citing Wong Wing, 163 U.S. 228)).

26     "As an initial matter, the mere fact that a person is detained does not inexorably lead to
27 the conclusion that the government has imposed punishment." Salerno, 481 U.S. at 746 (citing
28 Bell v. Wolfish, 441 U.S. 520, 537 (1979)). However, "[i]t is undisputed that at some point, . . .

1  detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process
2  violation." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (quoting Salerno, 481 U.S.
3  at 747 n.4). "The point at which detention constitutes a due process violation requires a case-by-
4  case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60
5  (9th Cir. 1988)). "A due process violation occurs when detention becomes punitive rather than
6  regulatory, meaning there is no regulatory purpose that can rationally be assigned to the
7  detention or the detention appears excessive in relation to its regulatory purpose." Torres, 995
8  F.3d at 708 (citing Salerno, 481 U.S. at 747). "[W]hile the existence of some threshold of per se
9  due process violation may be 'undisputed,' it has also never been clearly delineated in the
10 context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023)
11 (citation omitted), abrogated on other grounds by Doe v. Garland, 109 F.4th 1188 (9th Cir.
12 2024).

13 　　　Here, Respondent contends that Demore forecloses relief and warrants dismissal.
14 Respondent notes that Petitioner has had a full bond hearing and his detention (the length of
15 which "solely stem[s] from adjudication of Petitioner's voluntary and numerous applications for
16 review and related appeals seeking relief from removal") has a definite termination point when
17 his removal proceeding ends. Respondent argues that detention pending removal proceedings is
18 constitutionally permissible because the government has significant interests that do not wane
19 with the passage of time.

20 　　　As noted above, the Supreme Court rejected a *facial* challenge to mandatory detention
21 under 8 U.S.C. § 1226(c) in Demore. See Demore, 538 U.S. at 514 ("Respondent . . . filed a
22 habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of
23 § 1226(c) *itself*." (emphasis added)); Black v. Decker, 103 F.4th 133, 149 n.22 (2d Cir. 2024)
24 ("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c)[.]").
25 Demore does not directly address the issue presented here: whether § 1226(c) *as applied* to
26 Petitioner is punitive and thus unconstitutional. In fact, in Nielsen v. Preap, 586 U.S. 392 (2019),
27 the Supreme Court expressly preserved the right to bring such an as-applied challenge: "Our
28 decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-

applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

Although Petitioner has had a bond hearing and his detention has a definite termination point when his removal proceedings end, the Court notes that in upholding mandatory detention under 8 U.S.C. § 1226(c) in Demore, the Supreme Court made repeated references to the "brief" and "limited" timeframe at issue. See Demore, 538 U.S. at 513 ("brief period"); id. at 523 (("brief period"); id. at 526 ("limited period"); id. at 529 n.12 ("[t]he very limited time of the detention at stake under § 1226(c)"); id. at 531 ("limited period"). Demore specifically noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," relying on statistics from the Executive Office for Immigration Review ("EOIR"). 538 U.S. at 530. However, "[t]hirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors,'" and for the years 1999–2001, the "average length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Rodriguez v. Nielsen, No. 18-CV-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citing Letter from Acting Solicitor General Ian H. Gershengorn to Hon. Scott S. Harris (Aug. 26, 2016), at 2, 3, Demore v. Kim, 538 U.S. 510 (2003) (No. 01-1491)). "The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years." Rodriguez, 2019 WL 7491555, at *5 (citing Joint Appendix (Table 20) (Aug. 26, 2016), Jennings v. Rodriguez, 583 U.S. 281 (2018) (No. 15-1204)). The Government Accountability Office conducted a study and "found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days." Rodriguez, 2019 WL 7491555, at *5 (citing United States Government Accountability Office, Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges 33 (2017), https://www.gao.gov/assets/690/685022.pdf).

///

1    "It is undisputed that at some point, . . . detention can 'become excessively prolonged,
2  and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting
3  Salerno, 481 U.S. at 747 n.4). To the extent Respondent argues that there is no due process
4  violation because the length of detention is a result of Petitioner's various applications for relief,
5  the Court rejects such a contention. "Petitioner is entitled to raise legitimate defenses to removal
6  . . . and such challenges to his removal cannot undermine his claim that detention has become
7  unreasonable." Liban M.J. v. Sec'y of Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D.
8  Minn. 2019) (citing Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *9
9  (S.D.N.Y. July 25, 2018) ("the mere fact that a noncitizen opposes his removal is insufficient to
10 defeat a finding of unreasonably prolonged detention, especially where the Government fails to
11 distinguish between bona fide and frivolous arguments in opposition")). "[T]he fact that
12 Petitioner chose to pursue [an application for relief] and requested continuances to further that
13 application does not deprive him of a constitutional right to due process." Henriquez, 2022 WL
14 2132919, at *5.

15    The Court recognizes that "the government clearly has a strong interest in preventing
16 aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious
17 interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at
18 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are
19 interests of the highest order that only increase with the passage of time," noting that "[t]he
20 longer detention lasts and the longer the challenges to an IJ's order of removal take, the more
21 resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a
22 detainee absconding also inevitably escalates as the time for removal becomes more imminent."
23 Rodriguez Diaz, 53 F.4th at 1208. However, the Ninth Circuit in "*Torres* held that these
24 interests, which are nearly identical to the interests that support pretrial criminal detention, are
25 not so overpowering that they automatically trounce detainees' unquestionably strong interests in
26 their own physical liberty in every case." Doe, 732 F. Supp. 3d at 1082. See Torres, 995 F.3d at
27 710 ("[A]ll parties agree that at some point, regardless of the risks associated with Torres's
28 release, due process will require that he be released if not tried."); United States v. Briggs, 697

F.3d 98, 103 (2d Cir. 2012) ("We stress, moreover, that our repeated statements that length of detention alone is not dispositive must not be read to authorize detentions of any length simply because the other relevant factors weigh against the defendant. There is no bright-line limit on the length of detention that applies in all circumstances; but for every set of circumstances, due process does impose some limit.").

Based on the foregoing, the Court finds that Demore does not necessarily preclude relief or foreclose as-applied challenges. Therefore, dismissal based on Demore is not warranted and the motion to dismiss will be denied.

**C.  Substantive Due Process Claim**

Having found that dismissal is not warranted, the Court will direct Respondent to file an answer that more fully addresses the merits of Petitioner's substantive due process claim. In the petition, Petitioner relies on a decision from the United States District Court for the Northern District of California that "defined the contours of substantive due process in a challenge to ICE detention." (ECF No. 1 at 17.) In Doe v. Becerra, 732 F. Supp. 3d 1071, the district court applied the following five factors, which drew "from Ninth Circuit cases regarding detention before criminal trial and civil commitment proceedings," to determine "whether continued detention under Section 1226(c) violates substantive due process":

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
>
> (2) the government's contribution to any delay;
>
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
>
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
>
> (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held.

Doe, 732 F. Supp. 3d at 1080 (citing Doe v. Becerra, 723 F. Supp. 3d 688, 692 (N.D. Cal. 2024)).

///

As argued by Respondent, (ECF No. 8 at 6), the Court acknowledges that a decision from the United States District Court for the Northern District of California is not binding on this Court. The Court further recognizes that in light of the Ninth Circuit's decision in <u>Doe v. Garland</u>, 109 F.4th 1188, the United States District Court for the Northern District of California lacked § 2241 jurisdiction in <u>Doe v. Becerra</u>, 732 F. Supp. 3d 1071. Nonetheless, this does not prevent the Court from considering <u>Doe</u>, 732 F. Supp. 3d 1071, as persuasive authority.

The Court notes, however, that it has not made a determination on whether the <u>Doe</u> five-factor test should be adopted in this matter. The parties should address this test in their pleadings and may offer alternative tests. Additionally, Respondent should address "whether any of ICE's Alternatives to Detention programs (or other potential alternatives to custodial detention) would adequately protect the government's interests in protecting the public and ensuring that Mr. Doe appears at future proceedings." <u>Doe</u>, 723 F. Supp. 3d at 692.

### III.

### ORDER

Accordingly, the Court HEREBY ORDERS that:

1. Petitioner's motion to proceed under pseudonym (ECF No. 2) is GRANTED;
2. Respondent's motion to dismiss (ECF No. 8) is DENIED;
3. Within **THIRTY (30) days** of the date of service of this order, Respondent SHALL FILE an ANSWER addressing the merits of the Petition.
4. Within **THIRTY (30) days** of the date of service of this order, Respondent SHALL FILE any and all transcripts or other documents necessary for the resolution of the issues presented in the Petition. **The transcripts or other documents shall only be filed electronically and, to the extent practicable, provided in Optical Character Recognition ("OCR") format. Respondent shall not file a hard copy of the transcripts or other documents unless so ordered by this Court.**

///

///

///

5. Petitioner MAY FILE a Traverse within **THIRTY (30) days** of the date of service of Respondent's Answer. If no Traverse is filed, the Petition and Answer are deemed submitted at the expiration of the thirty days.

IT IS SO ORDERED.

Dated:  **May 6, 2025**                                   /s/ *Erica P. Grosjean*
                                                          UNITED STATES MAGISTRATE JUDGE

15